## WILLIAMS v. LIVINGSTON PARISH SCHOOL BOARD.

### No. 2015.

Court of Appeal of Louisiana. First Circuit.

Oct. 4, 1939.

Reid & Reid, of Hammond, for appellant.

Bolivar E. Kemp, Jr., Dist. Atty., of Amite, for appellee.

OTT, Judge.

Plaintiff alleges that he is a regular and permanent teacher for Livingston Parish, under Section 48 of Act 100 of 1922, as amended by Act 58 of 1936, § 1, holding a life certificate authorizing him to act as principal and teacher in any of the high schools of the State, and having taught in the schools of said Parish for more than three years; that he was regularly employed as principal and teacher in the Doyle High School in said Parish for the session of 1936–1937, and that he served satisfactorily in that position; that without bringing any charges against him and without assigning any reasons for its action, the Livingston Parish School Board notified him on April 22, 1937, that all positions in the high schools of the Parish were filled and that he would not be employed for the session of 1937–1938; that he attended a meeting of the said School Board in April, 1937, at which meeting the teachers for the 1937–1938 session were selected, and protested the action of the School Board in omitting him from the list of teachers of the Parish for the ensuing session and notified the School Board that its action in not giving him a position in the schools for the ensuing session was not acceptable to him. He further alleges that he is now and has been at all times since his discharge ready,

willing and able to serve as a principal and teacher in any of the high schools of the Parish at a salary regularly paid to other principals and teachers of his class, grade and experience; that principals and teachers of his class and grade were paid $150 per month for ten months for the 1937–1938 session.

The prayer of the petition is for judgment ordering the School Board to recognize plaintiff to be a regular and permanent principal and teacher for Livingston Parish, and ordering the School Board to give him employment at the same salary as is paid other principals and teachers of the same class, grade and experience; that he have judgment against said School Board for $1,500, the salary of which he was deprived during the ten months of the 1937–1938 session.

The defendant Board filed an exception of no cause or right of action, and exceptions of laches and lack of diligence on the part of plaintiff in bringing the suit. All of these exceptions, it appears, were referred to the merits.

The defendant Board admitted that plaintiff had taught in the Parish for a sufficient time to make him a regular and permanent teacher, but denied that his services were satisfactory, and denied that plaintiff is a regular and permanent teacher of the Parish under the law. The Board alleged that various charges and complaints were made against plaintiff reflecting on his competency to act as principal of the Doyle School; that he was offered, but would not consider, a position as teacher in the Parish. The Board admits that plaintiff appeared before it in April, 1937, and protested the action of the Board in omitting his name from the list of teachers for the session of 1937–1938, but the Board averred that plaintiff has worked steadily for a company in Baton Rouge at a higher salary than he was receiving as principal of the Doyle School, ever since the 1936–1937 session of that school closed.

After hearing testimony, the trial judge dismissed plaintiff's suit. In the absence of written reasons, we do not know the grounds on which the trial judge based his action—whether on the exception of laches, or on the ground that plaintiff had been offered a position as teacher in the schools of the Parish which he refused to accept in the place of a principalship. The case is here on an appeal by plaintiff.

The 1937–1938 session of the Livingston Parish schools began in July, 1937. Plaintiff knew in April, 1937, that he would not be re-employed as a principal in the schools of the Parish, and he went to work for a company in May of that year at a salary greater than he received as principal of the Doyle School. He made no further protest to the School Board, nor did he indicate before or at the time the schools of the Parish opened in July that he expected a school, nor did he advise the Board that he was ready to take up his duties as a qualified principal and teacher in the Parish when the schools opened in July, 1937. On the contrary, he continued to work at his job in Baton Rouge, and made no demand on the School Board whatever until this suit was filed on March 22, 1938, long after the School Board had employed the teachers for the session of 1937–1938 and when that session was practically over and the principals and teachers had been paid most of their salaries for that session out of the school funds of the Parish.

The School Board had to supply teachers for the schools of the Parish, and as plaintiff made no further demands after April, 1937, the Board had a right to assume that he had acquiesced in its action. While plaintiff testified that he would not have accepted a position as high school teacher, it is not altogether improbable but that the Board would have made some effort to place him in the schools of the Parish had he pressed his demand before the session was begun and the positions filled. In any event the Board was under no legal duty to hold open a position in the schools of the Parish for plaintiff when he failed to press his claims for a position and continued to work at a private job which, so far the Board knew, was as satisfactory to him as a position in the schools.

Sound public policy requires that an employee of a public body who claims to have been illegally discharged should press his claim for reinstatement with diligence and without unnecessary delay. The rule that laches on the part of such public employee will bar his claim for reinstatement is not based on any law of prescription or limitation of actions, but it arises from reasons of public policy. The processes of government must go on and employees and officials must be paid out of public revenue for carrying on the functions of government. Where a discharg-

ed employee sits idly by for an unreasonable length of time without pressing his claim for reinstatement, those charged with the duty of securing the necessary working personnel cannot hold up the administrative functions of government awaiting a decision on the part of the discharged employee as to what course he will take. The prevention of duplication of positions and the payment of double salaries requires such discharged employee, not only to press his demands, but also to submit his claim to the courts for adjudication without unnecessary delay.

■ Plaintiff not only failed to file his suit for some eleven months after he knew of his discharge from the position he was holding in April, 1937, but during that time he did not even advise the School Board that he intended to demand a position in the schools of the Parish. In our opinion, the companion cases of State ex rel. Calamari v. Orleans Parish School Board, 189 La. 488, 179 So. 830, and State ex rel. McMurray v. Orleans Parish School Board, 189 La. 502, 179 So. 834, have peculiar application to the present case and are decisive of the point under discussion. In those cases the two teachers did not file their suits, in one case for about twelve months after she was notified of her final discharge and in the other case after some eleven months from the time that she was definitely notified that she would not be reinstated, and the Supreme Court held that they were guilty of such laches as to bar their claims both for back salary and for reinstatement.

In the more recent case of State ex rel. Kundert v. Jefferson Parish School Board, 191 La. 102, 184 So. 555, a delay of eight months in filing suit for reinstatement after being notified of her discharge was held not unreasonable and did not constitute such laches as to bar her recovery and reinstatement. But in that case, the discharged teacher pressed her claim at the opening of the school term, and had the State Superintendent write the School Board a letter in her behalf, and she filed her suit within a month or so after she found out that the School Board would not accede to the advice of the State Superintendent and reinstate her.

The reason given by plaintiff for his failure to file his suit earlier was that the Secretary of the Teachers Association told him that the Tenure Law had been passed and the Association wanted to find out if

the law protected the teachers and as soon as there was a ruling on a case then pending, the teachers would know what to do. Similar excuses for the delay in filing suit were urged in the Calamari and McMurray cases and were held to be insufficient to excuse the delay, even though, under the circumstances in those cases, the excuses offered were much more justified than the reason offered by plaintiff in this case.

Learned counsel for plaintiff insists that, if plaintiff is barred from recovering past due salary because of his laches, he should not be denied his right to be reinstated as a permanent teacher of the Parish for that reason. But the right to be reinstated is lost by laches the same as the right to recover for back salary. These two rights are co-existent and interdependent, and a cause that defeats one will also defeat the other.

For the reasons assigned, it is ordered that the exception of laches and lack of diligence on the part of plaintiff be and the same is hereby sustained, and, accordingly, that the judgment which dismissed plaintiff's suit be and the same is hereby affirmed.