**Irma J. SMITH et al.**

v.

**CONCORDIA PARISH SCHOOL BOARD et al.**

**United States of America, Intervenor.**

**Civ. A. No. 11577.**

United States District Court, W. D. Louisiana, Monroe Division.

Aug. 18, 1971.

Stanley A. Halpin, Jr., New Orleans, La., for plaintiffs.

William C. Falkenheiner, Dist. Atty., Vidalia, La., for defendants.

John N. Mitchell, Atty. Gen. of United States, United States Department of Justice, Washington, D. C., Donald E. Walter, U. S. Atty., Western District of Louisiana, Shreveport, La., for the Government.

BEN C. DAWKINS, Jr., Chief Judge.

RULING

The Court carefully has considered the motion made for a preliminary injunction and temporary restraining order filed herein in behalf of Sammy Davis, Jr., Cleveland Watts, Eddie Coleman, Clarence Hymon, and Odeal Montgomery, which was presented to it during the late afternoon of August 16th, 1971.

Upon its receipt, we immediately contacted Honorable W. C. Falkenheiner, District Attorney for Concordia, and counsel for its School Board; and today have received a letter from Mr. Falkenheiner, enclosing a mass of data regarding these teachers, his letter and the original documents being attached hereto.[1]

It appears that some of these teachers, pursuant to the Louisiana Teacher Tenure Law, LSA–R.S. 17:441 et seq., have had charges filed against them by the Superintendent of Schools, Ben L. Green, Jr., which clearly are not in the slightest manner connected with desegregation orders heretofore entered in this case, nor are they racially motivated, but, on the contrary, are purely for disciplinary or other apparently valid reasons concerning their conduct as teachers in the School System. Mr. Falkenheiner's letter, and its attachments, speak for themselves and there is no need for this Court to elaborate upon them.

Obviously, the procedure being followed is in strict accordance with LSA–R.S. 17:443, a photocopy thereof being attached hereto (only the portion marked by this Court in brackets being clearly unconstitutional).[2] It even appears that there is one non-tenured white teacher recommended not to be re-employed by her black principal, but who is to be afforded a hearing as if she did possess such tenure. Another non-tenured teacher, Joyce Smith, likewise is being afforded a hearing, as provided in § 443.

Considering all of the circumstances disclosed by Mr. Falkenheiner's letter and its attachments which show: That desegregation or racial motives are in no way involved in connection with the action proposed to be taken with respect to the persons mentioned in the motion, or the others not mentioned therein; that they simply are charged for apparent good cause with misconduct or incompetence in performing their duties; that they are entitled to a full, fair hearing before the School Board (either openly or in closed session, according to their own choice) and will be granted such, with provision for counsel to be present to represent them; and that, if the Board's decision is adverse to any of them, they have a full, complete, and adequate remedy in the State Courts of Louisiana, as shown in the statute mentioned this Court should not and will not interfere with the orderly internal administrative processes of the School Board, which is entitled properly to manage its affairs in accordance with State law.

If we were to grant the relief prayed for in this motion, in every instance, in all school systems, not only in this District but nation-wide, where disciplinary or other action is necessitated by a teacher's conduct or by other valid circumstances such as are described in Mr. Falkenheiner's letter, this Court (and all United States District Courts where desegregation orders have been entered) literally would be flooded with similar motions, and attendant probably protracted hearings, exacerbating already overcrowded dockets, and making it virtually impossible for such Courts to perform their duties in matters in which

---

1. See Appendix A.

2. See Appendix B.

federal law requires action by them. Obviously, neither the Supreme Court, nor Congress in adopting the Civil Rights Act of 1964, ever contemplated or intended such a result.

Moreover, although of no particular moment, since curative action could be taken by movants' counsel, it is noted that he totally has failed to comply with the mandatory requirement of Rule 65(b)(2), F.R.Civ.P., in that he has failed to certify " * * * to the court in writing the efforts, if any, which have been made to give the notice and reasons supporting his claim that notice should not be required."

For all of these reasons, we must decline to sign the proposed Temporary Restraining Order attached to the Motion; and relegate movants to the administrative and judicial procedures available to them under State law.

## Appendix A

### OFFICE OF
# THE DISTRICT ATTORNEY
### SEVENTH JUDICIAL DISTRICT
#### CONCORDIA AND CATAHOULA PARISHES

W. C. FALKENHEINER
District Attorney
P. O. Box 308
Vidalia, Louisiana 71373

GEORGE GRIFFING
Assistant District Attorney
P. O. Box 97
Jonesville, Louisiana 71343

August 16, 1971

Telephones:
Vidalia, La. 336-5526
336-5272
Ferriday, La. 757-2140
Harrisonburg, La. 744-5232
Jonesville, La. 339-7974

Honorable Ben C. Dawkins, Jr.
District Judge
U. S. District Court
U. S. Post Office Bldg.
Shreveport, Louisiana

> Re: Irma J. Smith, et al.,
> United States of America,
> vs.
> Concordia Parish School Board,
> et al.,
> Civil Action No. 11,577

Dear Judge Dawkins:

After your telephone call of today, I have contacted Mr. Calhoun, President and Mr. Green, Superintendent; of the School Board.

The only action taken by the School Board is shown on the attached copy of the minutes of a school board meeting on the 5th day of August; 1971. The individuals covered by that resolution are the cases which I mentioned in your office with Mr. Halpin and in my Motion for Supplemental Relief of June 3, and a resume of each case is as follows:

(1) Sammy Davis, Jr., a tenured black principal against whom charges of willful neglect of duty and incompetence (3 counts) and willful neglect of duty, incompetence and dishonesty (1 count) have been filed. A copy of the charges is enclosed. A hearing under the Louisiana Tenure Law is scheduled for August 27, as shown by the letter annexed.

(2)  Cleveland Watts, a tenured black teacher under a
3 year "C" certificate which has expired.  Mr. Watts
is a resident of the State of Mississippi and is no
longer the holder of a valid Louisiana teachers certi-
ficate.  He is also charged with willful neglect and
incompetence by his supervisors, including a black
principal.  A hearing is scheduled for September 2,
1971 under the Louisiana Tenure Law as shown by the
attached letter.

(3)  Bessie Luckett, a black tenured teacher against
whom charges of willful neglect of duty and incompetence
have been preferred by her black principal and as shown
by the copy of notice enclosed, her hearing is scheduled
for 2 September, 1971.

(4)  Gene Fleming, is a white temporary, probationary
teacher whose reemployment was not recommended by her
black principal.  A hearing is scheduled under the
Louisiana Tenure Law for 27 August, 1971 as shown by
the letter attached.  In this case and the one following
we are following the same procedure as to notice and
hearing as in the cases of tenured teachers although
the Tenure Act does not require that we go this far for
the temporary people.

(5)  Joyce Smith, a black temporary, probationary
teacher who is single and became pregnant and whose
reemployment was not recommended by her white principal
and as shown by the copy of the notice enclosed, her
hearing is scheduled for 27 August, 1971.

You mentioned to me on the phone only the cases of Davis
and Watts as being of some objection to the plaintiffs.  I
assume that they do not object to the action taken in the
other three cases.  However, you gave me three other names being
those of Eddie Coleman, Clarence Hymon and Odeal Montgomery.

Mr. Calhoun advises me that there definitely has been no
action by the school board on these people, but that a special meeting
is scheduled for tomorrow, (Tuesday, Aug. 17) at which the
board will discuss the problems presented to it caused by a
reduction in the amount of funds being received under one of the
Federal grants (I believe that he told me Title I).  These three
last named persons were being paid under this grant and they have
been furnished notices by Mr. Green of the cut-off of these funds.

The Board may have to make up the loss of these funds out of its own funds, if available, or it may decide to discontinue this program and find some other positions for these persons. In addition to Coleman, Hymon and Montgomery, all of whom are black, the same problem exists with respect to Edgar Gibson who is white. Nevertheless, the board at this time has taken no action against these persons and as I understand it, does not plan to demote them but may have to change their assignments because of the cut-off in the Federal funding of the program under which they operate.

It is regrettable, of course, that the board has to take disciplinary action against the five teachers first mentioned, but these problems always arise in dealing with personnel and the board cannot assume the responsibility for maintaining these persons in the responsible positions which they hold if they are in fact guilty under the law of serious charges. The Board should be allowed to continue with these hearings which are being held with proper notice and protection of the defendants, rights, subject of course to judicial review of the results.

I appreciate the opportunity of furnishing this information to you.

With very best wishes,

Very truly yours,

W. C. FALKENHEINER
District Attorney

WCF:sal

**Ch. 2**      TEACHERS AND EMPLOYEES    **R.S. 17:443**

attendance probationary teachers should be dismissed and tenured teachers should be given preference if capable of performing services formerly performed by probationary teachers. Op. Atty.Gen.1942–44, p. 1519.

Where schools have been consolidated and overstaffing exists, a tenure teacher who is not dismissed but merely left temporarily without employment because of overstaffing could not force dismissal of probationary teacher during current school term, but at end of school term board must give preference to permanent teachers over probationary teachers in employing teachers for coming year. Op.Atty.Gen.1940–42, p. 3695.

**21. Reinstatement**

Where relatrix was not a teacher within the Teachers' Tenure Act, she was not entitled to be reinstated as teacher in parish school and to be paid compensation from time of omission of her name from list of teachers, even though she had not been dismissed or discharged in conformity with the act. State ex rel. Sibley v. Ascension Parish School Bd., 1953, 222 La. 923, 64 So. 2d 221.

Where probationary high school music teacher was discharged by parish school board upon written recommendation, accompanied by valid reasons therefor, of parish superintendent of schools and after due consideration by board of the reasons, this section was complied with and hence teacher was not entitled to reinstatement. State ex rel. Meyer v. Tangipahoa Parish School Bd., App.1945, 21 So.2d 189.

## § 443. Removal of teachers; procedure; right to appeal

A permanent teacher shall not be removed from office except upon written and signed charges of wilful neglect of duty, or incompetency or dishonesty, or of being a member of or of contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, [or of advocating or in any manner performing any act toward bringing about integration of the races within the public school system or any public institution of higher learning of the state of Louisiana,] and then only if found guilty after a hearing by the school board of the parish or city, as the case may be, which hearing may be private or public, at the option of the teacher. At least fifteen days in advance of the date of the hearing, the school board shall furnish the teacher with a copy of the written charges. The teacher shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at the said hearing. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.

If a permanent teacher is found guilty by a school board, after due and legal hearing as provided herein, on charges of wilful neglect of duty, or of incompetency, or dishonesty, or of being a member of or of contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, or of advocating or in any manner performing any act toward bringing about integration of the races within the public school system of the state of Louisiana, and ordered removed from office, or disciplin-

ed by the board, the teacher may, not more than one year from the date of the said finding, petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the court shall have jurisdiction to affirm or reverse the action of the school board in the matter. If the finding of the school board is reversed by the court and the teacher is ordered reinstated and restored to duty, the teacher shall be entitled to full pay for any loss of time or salary he or she may have sustained by reason of the action of the said school board. As amended Acts 1956, No. 249, § 1.

### History and Source of Law

**Source:**

Acts 1922, No. 100, § 48.
Acts 1936, No. 58, § 1.
Acts 1944, No. 250, § 1.
Acts 1946, No. 297, § 1, pars. 4, 5.

See History and Source of Law under R.S. 17:441.

The 1956 amendment added as grounds for removal, membership in or contributing to certain prohibited groups and advocating integration of the races within schools.

### Comparative Laws

Ala.—Code of Ala., Tit. 52, § 165.
Fla.—F.S.A. § 230.23.
Idaho—I.C. § 33-714.

Ind.—Burns' Ann.St. § 28-4308.
N.M.—1953 Comp. § 73-12-15.
Okl.—70 Okl.St.Ann. § 6—2.

### Law Review Commentaries

Back pay and reinstatement. Melvin G. Dakin, 18 La.L.Rev. 79 (Dec.1957).

1956 legislation affecting segregation, Charles A. Reynard, 17 La.L.Rev. 101 (Dec.1956).

Review of quasi-judicial action. Melvin G. Dakin, 15 La.L.Rev. 318 (Feb. 1955).

Tenure, reduction in position and salary. 2 La.L.Rev. 757 (May 1940).

### Notes of Decisions

Abolition of position  9
Actions or suits  21
Back pay  15
Certification of teachers  3
Charges against teacher  13
Compensation  19
Consolidations and reduction in number of teachers  8
Constitutionality  1
Construction and application  2
Decisions under prior laws  24
Dual office holding  7
Evidence  28
Full hearing  27
Grounds for removal or dismissal  6
Injunction  22
Judicial review of removal  20
Leave of absence  16
Mandamus  23

Membership in N.E.A.  29
Notification of dismissal  12
Powers of board in general  4
Prescription  25
Proceedings in case of dismissal in general  11
Reinstatement and back pay  15
Removal without cause  5
Resignation or voluntary termination of employment  18
Seniority in dismissal  10
Suits  21
Suspension  14
Tardiness  26
Transfer to another school or position  17
Validity  1
Waiver  30